FILED'09 AUG 14 14:11USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES THOMAS,

Plaintiff,

v.

EVERETT CARROLL; JOHN VIAL; BRIAN POWERS; JAMES MILLER; GREGORY COSTANZO, Individually,

Defendants.

Civil No. 08-3111-CL

ORDER

CLARKE, Magistrate Judge:

Plaintiff's complaint alleges claims against defendants for violation of his civil rights under 42 U.S.C. § 1983. Plaintiff seeks non-economic damages, punitive damages, and attorney's fees and costs. This court has jurisdiction pursuant to 28 U.S.C. § 1331. The parties have executed written consents to entry of judgment by a magistrate judge (#41). 28 U.S.C. § 636(c). Before the court is defendants' motion for summary judgment (#17). For the reasons explained, defendants' motion for summary judgment is granted in part and denied in part.

**LEGAL STANDARDS**

Pursuant to Rule 56(c), summary judgment "should be rendered, if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party must carry the initial burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact. Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986). Summary judgment should be granted for the movant, if appropriate, in the absence of any significant probative evidence tending to support the opposing party's theory of the case. Fed. R. Civ. P. 56(e); THI-

Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076.

**FACTS**

Construing the facts in the light most favorable to the non-movant, a review of the record reveals the following:

Oregon Department of Transportation (ODOT) owns the Suncrest rest area in Southern Oregon. (Jones Aff. ¶ 3 and Attachs.) Defendant Everett Carroll is the ODOT employee responsible for managing the Suncrest rest area, and was in charge in 2006. He is the official in charge of the rest area for purposes of OAR 734-030-0015 and "can exclude individuals from Suncrest who violate OAR 734-030-0010 by engaging in prohibited conduct." (Carroll Aff. ¶¶ 3-4.) Defendant Vial was employed by ODOT as District 8 manager until early 2008. (Defs. Answer ¶ 2.)

Defendants James Miller and Gregory Costanzo were both employed as patrol officers by the Oregon State Police (OSP) in 2006 and covered a portion of Southern Oregon that included the Suncrest rest area. (Miller Aff. ¶¶ 3-4; Costanzo Aff. ¶¶ 3-4.)

On or about September 3, 2006, plaintiff James Thomas was involved in an altercation at Suncrest with an individual named Kevin Corber. (von Ter Stegge Aff. Attach. 2 (Thomas

Dep. 76:3-76:10; 77:10-79:4).) Defendant Carroll learned about the September 3, 2006, altercation from OSP and reviewed the police report on the incident. Defendant Carroll believes that plaintiff's conduct violated subsection (12) (participating in a disturbance or riotous behavior) and subsection (14) (creating unreasonable noise) of OAR 734-030-0010 concerning prohibited activities at the rest area. (Carroll Aff. ¶¶ 8-9 & Ex. B.) Plaintiff agrees that his behavior at the Suncrest rest area on September 3, 2006, violated Subsection 14 (creating unreasonable noise) of the Oregon Administrative Rules (OAR 734-030-0010). (von Ter Stegge Aff. Attach. 2 (Thomas Dep. 205:5-205:20).)

After learning of the September 3, 2006, incident, defendant Carroll asked for OSP assistance in having plaintiff trespassed from the Suncrest rest area because of the September 2006 incident and previous incidents where he believed that plaintiff engaged in prohibited activities. (Carroll Aff. ¶ 10.)

On September 8, 2006, defendant Miller was dispatched to Suncrest rest area because defendant Carroll had called dispatch that morning to report that plaintiff was in the rest area and defendant Carroll had requested that plaintiff be trespassed from Suncrest. Defendant Miller believed that plaintiff had already been formally excluded from the rest area. Defendant Miller told plaintiff that he had been trespassed by ODOT and that he needed to leave the rest area. Plaintiff refused, so defendant Miller cited plaintiff for Criminal Trespass. (Miller Aff. ¶ 5.)

On October 6, 2006, defendant Miller saw plaintiff by chance and told plaintiff that the Criminal Trespass citation was dismissed. He also told plaintiff that he was not allowed back at

Suncrest because ODOT had requested OSP exclude him on ODOT's behalf, and would be subject to arrest for criminal trespass if he did so. (Miller Aff. ¶ 7.)

On October 11, 2006, defendant Miller saw plaintiff at the Suncrest rest area and told him to leave the rest area because he was excluded. Plaintiff left. (Miller Aff. ¶ 8.) Plaintiff admits that he was told by defendant Miller on at least three separate occasions that he was not allowed to be at Suncrest and was trespassing plaintiff on behalf of ODOT, and that he was excluded from the rest area. (von Ter Stegge Aff. Attach. 2 (Thomas Dep. 132:4-135:1).)

Sometime prior to November 27, 2006, defendant Powers and other patrol sergeants had a meeting with ODOT. Defendant Vial and defendant Carroll were present at the meeting. Mr. Thomas was discussed at the meeting. (Franell Aff. Attach (Powers Dep. at 21-22.)

On November 27, 2006, defendant Costanzo saw Plaintiff at Suncrest rest area. He had seen a police briefing about plaintiff and the rest area and he called defendant Powers about plaintiff. Defendant Powers called defendant Carroll about plaintiff and then told defendant Costanzo to arrest plaintiff. (Costanzo Aff. ¶¶ 5-6; von Ter Stegge Aff. Attach 2 (Thomas Dep. at 145-48) & Attach 3 (Powers Dep. at 11); Franell Aff. Attachs. (Costanzo Dep. at 10, 13; Powers Dep. at 10-11).) Defendant Costanzo arrested plaintiff for Criminal Trespass II. (Costanzo Aff. ¶¶ 5-6; see von Ter Stegge Aff. Attach 1.) Defendant Costanzo did not ask plaintiff to leave the rest area before he arrested him. (Franell Attach (Costanzo Dep. at 10:4-11:10; see von Ter Stegge Aff. 2 (Thomas Dep. at 135).)

Plaintiff received a judgment of acquittal in his subsequent Criminal Trespass II trial because the judge found that ODOT Oregon Administrative Rules did not give the rest area

attendant authority to prohibit re-entry into the rest area. (von Ter Stegge Aff. ¶ 3; Franell Aff. Attach. (criminal trial excerpt).)

Plaintiff filed his complaint in this case on October 22, 2008. (Doc. #1.)

**DISCUSSION**

Plaintiff alleges that defendants' actions violated his right to freedom of movement under the First and Fourteenth Amendments; his right to be free from illegal seizures under the Fourth Amendment; his right to due process under the Fourth and Fourteenth Amendments; and his right to be free from cruel and unusual punishment under the Eighth Amendment. Defendants move for summary judgment on all claims. Plaintiff responds only to defendants' motion as to the "Fourth Amendment search and seizure" issue.

**Statute of limitations**

Defendants contend that plaintiff first interactions on September 8, 2006, and October 11, 2006, with defendant Miller are barred by the statute of limitations.

In Oregon, the state's "two-year statute of limitations for personal injury actions [ORS 12.110(1)] applies to actions under 42 U.S.C. § 1983." Cooper v. City of Ashland, 871 F.2d 104, 105 (9th Cir.1989) (per curiam); Clavette v. Sweeney, 132 F. Supp.2d 864, 873 (D. Or. 2001).

Plaintiff alleges in his complaint that he seeks damages arising out of an investigation, detention, arrest, incarceration, and related events occurring on or about November 27, 2006. However, plaintiff refers in his complaint to interactions with defendants occurring on September 8 and October 11, 2006. Plaintiff filed his complaint on October 22, 2008. To the

extent that plaintiff alleges any claims based on events occurring on September 8, 2006, and October 11, 2006, such claims are barred.

**Fourteenth Amendment claim**

Defendants contend that plaintiff's procedural due process claim fails as a matter of law because all section 1983 claims related to unlawful arrest must be brought under the Fourth Amendment. It is unclear whether plaintiff alleges a procedural due process or substantive due process claim. However, the "Fourth Amendment, rather than general due process, standards appl[y] to claims of unconstitutional seizures of the person." Larson v. Neimi, 9 F.3d 1397, 1400 (9th Cir. 1993) (and cases cited). Based on plaintiff's complaint allegations and the fact that plaintiff does not argue that a due process claim is stated, defendants' motion for summary judgment as to any Fourteenth Amendment claim should be granted.

**First Amendment claim**

Defendants contend that plaintiff's First Amendment claim fails as a matter of law because "freedom of movement" is not a right protected by the First Amendment. While freedom of movement may be a right protected by the Constitution, be it the First Amendment or Fourteenth Amendment, see Nunez v. City of San Diego, 114 F.3d 935, 944, 948, 949 & n.11 (9th Cir. 1997) (constitutional challenge to curfew ordinance), the right does not appear to be implicated by plaintiff's complaint allegations, and plaintiff does not argue that it does in his response to defendants' motion. Defendants' motion for summary judgment as to any First Amendment claim should be granted.

//

**Eighth Amendment claim**

Defendants contend that plaintiff's Eighth Amendment claim fails as a matter of law because the Eighth Amendment applies only to punishment for convicted crimes. The Supreme Court has determined that the Cruel and Unusual Punishments Clause of the Eighth Amendment circumscribes the criminal process, with its primary purpose "'directed at the method or kind of punishment imposed for the violation of criminal statutes . . . .'" Ingraham v. Wright, 430 U.S. 651, 667 (1977) (quoting Powell v. Texas, 392 U.S. 514, 531-32 (1968)). The Ingraham Court noted that, when confronted with claims that impositions outside the criminal process constituted cruel and unusual punishment, the Court has found that the Eighth Amendment is inapplicable. 430 U.S. at 667-68. Plaintiff was not convicted of a crime in this case, and the Eighth Amendment does not apply. Defendants' motion for summary judgment as to any Eighth Amendment claim should be granted.

**Fourth Amendment claim**

Defendants contend that plaintiff's Fourth Amendment claim fails as a matter of law because ODOT's exclusion of plaintiff from the rest area was lawful. Defendants further contend that plaintiff's arrest was not a violation of the Fourth Amendment because his arrest was supported by probable cause. Plaintiff responds that defendants' arguments fail because the issue of whether ODOT or the OSP had the authority to prohibit him from reentry into the rest area was litigated in state court and decided in the negative and is binding in this subsequent section 1983 action. Defendants reply that plaintiff's judgment of acquittal in state court has no preclusive effect in this proceeding.

Res judicata or collateral estoppel

Collateral estoppel, or issue preclusion, can preclude relitigation of issues of fact or law decided and necessary to a state court judgment–be it civil or criminal-- in a later section 1983 suit involving a party to the first case. Allen v. McCurry, 449 U.S. 90 (1980); see Haring v. Prosise, 462 U.S. 306 (1983); see also Haupt v. Dillard, 17 F.3d 285, 289 (9th Cir. 1994) (probable cause determination at preliminary hearing of criminal prosecution resulting in judgment of acquittal collaterally estopped relitigation of that issue). Federal courts must apply state law in determining the extent of preclusion. Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). As to the elements of issue preclusion in Oregon, see Nelson v. Emerald People's Util. Dist., 318 Or. 99, 104 (1993), it is "well settled that a judgment is binding on both parties and their privies." Gwynn v. Wilhelm, 226 Or. 606, 609 (1961). In Oregon, "To be in privity with a party, a person must have been able to 'direct the course of litigation' such that he or she 'had a fair and complete opportunity to litigate the issue liability' in the first litigation," that is, privity is defined narrowly, "requiring actual control." Skoog v. County of Clackamas, 469 F.3d 1221, 1230 (9th Cir. 2006) (quoting Rynearson v. Firestone Tire & Rubber Co., 43 Or. App. 943 (1979)). It seems clear that defendants to this action were not parties to the state criminal litigation, nor did they control the litigation so as to be in privity.[1] Accordingly, issue preclusion does not apply in this case and the court will address the issue on

---

[1] In his supplemental opposition, plaintiff backs off of his argument that the issue of whether his exclusion was lawful was res judicata. Plaintiff filed his "Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment and Response to Defendant's Reply" (#42) without leave of court. Counsel is reminded that briefing additional to a response and reply to a motion require leave of court. Local Rule 7.1(e)(3).

its merits.

Lawfulness of exclusion

ORS 164.245 provides in pertinent part that, "A person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully . . . in or upon premises." ORS 164.245(1). As used in ORS 164.245 and applicable in the circumstances here, "Enter or remain unlawfully" means: "(b) To fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge," or "(c) To enter premises that are open to the public after being lawfully directed not to enter the premises." ORS 164.205(3). Further, in administrative regulations governing ODOT and applicable to rest areas, OAR 734-030-0015, entitled "Compliance," provides that, "The rest area attendant in charge of any rest area is authorized to require compliance with these regulations and is authorized to order any person violating these regulations to leave the rest area." OAR 734-030-0010 lists certain activities prohibited in rest areas, including "(11) Using restroom facilities to bathe, wash clothing, dishes or other materials," and "(14) "Creating noise by any means which interferes with the reasonable use of the rest area by other rest area visitors."

Defendants rely on ORS 164.205(3)(c), supra, to argue that ODOT's exclusion was lawful because defendant Carroll, as representative of ODOT and the "person in charge" requested that OSP exclude plaintiff from the property on ODOT's behalf because of the September 3, 2006, incident and other incidents of rule violations at the rest area; plaintiff was told on three occasions by defendant Miller that he was excluded from the Suncrest rest area and would be arrested if he returned; and plaintiff entered Suncrest rest area from which he had

been excluded. Plaintiff contends that he was not lawfully excluded because ODOT did not have the legal authority to prohibit him from reentry into the rest area and, also, that he was not arrested after being lawfully told to leave the rest area.

It is true as defendants argue that, under the trespass statute, a person may be excluded from public premises if the person enters after being "lawfully" directed not to enter the premises. ORS 164.205(3)(c). However, the regulations, which were promulgated by ODOT, authorizes only that the rest area attendant may order a person "to leave the rest area," and may order the person to leave only where that person is "violating these regulations." OAR 734-030-0015. The person must be violating "these regulations" before the person may be ordered to leave. The statute defining "Enter or remain unlawfully" includes two different definitions of the phrase: one addresses the situation where a person fails to leave after being lawfully directed to do so, and the second addresses the situation where a person enters after being lawfully directed not to enter. ORS 164.205(3)(b)(c). As emphasized above, it is notable that each is qualified by the phrase "lawfully directed." The only authority granted the rest area attendant in charge of Suncrest rest area is that provided by OAR 734-030-0015 – the attendant may order any person "violating these regulations" to "leave the rest area." The regulation does not authorize the rest area attendant to order the person not to reenter the rest area. The court cannot agree with defendants' arguments that the plain and logical reading of OAR 734-030-0015 does not preclude permanent exclusion, or that ODOT's interpretation and construction of the regulation is plausible. ODOT could have promulgated regulations which authorize the rest area attendant to prohibit reentry, which would have been consistent with the trespass statute,

but it did not. While the court can understand defendants' frustration that this reading of the regulation would, in theory, allow a person ordered to leave the rest area to merely step outside the rest area property and then reenter lawfully, and ODOT could do nothing to prevent such reentry, the language of the regulation is what it is and ODOT may not expand the authority granted.

Arresting officers have probable cause if, at the time of arrest, the facts and circumstances within their knowledge and of which they have reasonably trustworthy information, were sufficient to warrant a prudent person in believing that the arrested person had committed or was committing an offense. United States v. Martin, 509 F.2d 1211, 1213 (9th Cir. 1975); United States v. Buckner, 179 F.3d 834, 837 (9th Cir. 1999). The ODOT regulations limit exclusion from the rest area only to the situation where a person fails to leave after being lawfully directed to do so, that is, where the person is "violating these regulations." There is no evidence in the record that plaintiff was violating rest area regulations on November 27, 2006, or that he was asked to leave the rest area on that date before he was arrested. In fact, the evidence in the record is that plaintiff was not observed committing any crime in the rest area, he wasn't causing a commotion in the rest area, he wasn't harassing anyone, and he wasn't bathing in the restroom facilities. Also, defendant Costanzo did not ask plaintiff to leave. (Franell Aff. Attach. (Costanzo Dep. at 10-11).) The court has ruled that the ODOT regulations do not allow permanent exclusion from rest areas. Under the trespass statutes and ODOT regulations, the ODOT defendants did not have probable cause to cause plaintiff's arrest on November 27, 2006. However, under the probable cause requirements set forth above, issues of

fact remain as to whether the OSP officer defendants may have had probable cause to arrest plaintiff on November 27, 2006.

Defendants' participation in arrest

Defendants also contend that defendants Carroll, Vial, and Miller cannot be held liable for the arrest of plaintiff because they were not personally involved in any of the activities that constituted the alleged deprivation of plaintiff's rights against unlawful seizure and arrest. Plaintiff responds that defendants Carroll, Vial, Powers, and Costanzo had personal involvement in the decision to illegally arrest him.

Essential to a section 1983 claim is a demonstration that defendant personally participated in the alleged constitutional violation. "Liability under section 1983 arises only upon a showing of personal participation by the defendant. . . . There is no respondeat superior liability under section 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (and cases cited).

It is clear on the evidence in the record that defendant Miller had no personal involvement in the arrest of plaintiff on November 27, 2006, and plaintiff does not contend otherwise. Defendants' motion for summary judgment as to defendant Miller is granted, and defendant Miller is dismissed as a defendant in this case.

There is evidence in the record that defendant Carroll personally participated in plaintiff's arrest: defendant Powers testified that, after defendant Costanzo called him on November 27, 2006, he called defendant Carroll and spoke to him about plaintiff being at the rest area and refusing to leave. He testified that, "And Everett Carroll told me that since Mr.

Thomas was there and he had been trespassed and he was not going to leave, that he should be arrested." (Franell Aff. Attach (Powers Dep. at 10-11).) Defendants' motion for summary judgment as to defendant Carroll is denied.

As to defendant Vial, the record is not as clear. There is evidence that defendant Vial, "the area manager," was present at a meeting a couple of months prior to the November 2006 incident, where "we talked about problems we were having at the rest areas during that meeting. And during that meeting, it was discussed that Mr. Thomas was trespassing and that if he did return, that he should be arrested." (Franell Aff. Attach (Powers Dep. at 21-22).) Defendant Carroll states in his affidavit that, after October 11, 2006, he received phone calls about plaintiff "creating disturbances at Sun Crest rest area." He "spoke again with John Vial and Lt. Powers." (Carroll Aff. ¶ 13.) There is also evidence that plaintiff's attorney in 2006 contacted "the ODOT regional manager" by telephone to discuss plaintiff's arrest. (Dames Aff.) The court concludes that this evidence raises a genuine issue of material fact as to defendant Vial's participation in the arrest of plaintiff in November 2006. Defendants' motion for summary judgment as to defendant Vial is denied.

Qualified immunity

In their motion, defendants seem to contend that the OSP defendants, naming defendants Miller and Costanzo, are entitled to qualified immunity and, in their reply, defendants contend that all defendants, the ODOT defendants and OSP defendants, are entitled to qualified immunity. Plaintiff responds that defendants are not entitled to qualified immunity.

Qualified immunity shields government agents from suit for damages if a reasonable

official performing discretionary functions could have believed that his or her conduct was lawful, in light of clearly established law and the information possessed by the official. Anderson v. Creighton, 483 U.S. 635, 637-39, 641 (1987); Hunter v. Bryant, 502 U.S. 224 (1991) (per curiam). This standard shields all government officials except those who are either plainly incompetent or who knowingly violate the law. Malley v. Briggs, 475 U.S. 335, 341 (1986). Ordinarily, the court employs the sequential analysis set forth in Saucier v. Katz, 533 U.S. 194 (2001), first determining whether the facts alleged by plaintiff, taken in the light most favorable to plaintiff, establish a constitutional violation; and, if a violation could be established under the facts alleged, then considering whether the right was clearly established. Id. at 201; see Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808, 818 (2009) (Saucier analysis no longer regarded as mandatory). Here, the court has determined that the facts of record could establish a Fourth Amendment violation. Defendants agree that plaintiff has a clearly established constitutional right to be free from arrest without probable cause.

Defendants contend that they are entitled to qualified immunity because they reasonably interpreted the OAR as not conflicting with the ORS defining criminal trespass II. They argue that it was reasonable to interpret and understand the ORS as authoritative; the instance with plaintiff was apparently the first instance in which ODOT's and the OSP's understanding of their ability to exclude individuals from rest areas was challenged and they are entitled to a reasonable interpretation of the law; and a reasonable officer would not be on notice that "an ODOT administrative rule (with no explicit language to this effect) essentially eliminated the crime of Criminal Trespass II with regard to the unlawful entry of rest areas." (Defs. Reply at

10.) Defendants argue, therefore, that the OSP defendants did not violate clearly established law by relying on ORS provisions in finding that plaintiff had committed criminal trespass II, and the ODOT defendants did not violate clearly established law by interpreting their own OAR in a manner that does not conflict with an OAR and does not limit their right to exclude individuals from rest areas subject to prosecution for reentering unlawfully which authority is clearly allowed by the trespass statutes.

The court has concluded that, although the ORS trespass statutes define criminal trespass II to include the situation where a person fails to leave after being lawfully directed to do so, and the situation where a person enters after being lawfully directed not to enter, the Oregon administrative rules promulgated by and applicable to ODOT in their jurisdiction over rest areas, authorizes the rest area attendant only "to order any person violating these regulations to leave the rest area." OAR 734-030-0015. The regulation does not authorize the rest area attendant to order the person not to reenter the rest area.

Clearly, as to the ODOT defendants, it was not reasonable for them to interpret their own regulations so as to exclude plaintiff from reentering the Suncrest rest area for past violation(s) of the rest area regulations. The ODOT defendants are not entitled to qualified immunity.

As to OSP defendants Powers and Costanzo, the court finds that a determination whether they are entitled to qualified immunity should await the development of facts at trial. The record shows that defendant Powers was present at a meeting with ODOT defendants Vial and Carroll at which plaintiff and rest areas were discussed. The court cannot determine as a matter of law on this record that the OSP defendants are entitled to qualified immunity.

**ORDER**

Based on the foregoing, it is ordered that defendants' motion for summary judgment (#17) be granted in part and denied in part: defendants' motion for summary judgment as to the ground that the statute of limitations bars any claim based on events occurring on September 8, 2006, or October 11, 2006, is granted; their motion as to plaintiff's Fourteenth Amendment claim, his First Amendment claim, and his Eighth Amendment claim is granted; their motion as to the ground that defendant Miller should be dismissed is granted; and defendants' motion as to their remaining grounds is denied.

IT IS SO ORDERED.

DATED this 14 day of August, 2009.

UNITED STATES MAGISTRATE JUDGE